THE MAYOR AND ALDERMEN OF JERSEY CITY ET AL.,
PROSECUTORS, DEFENDANTS IN ERROR, v. THE
STATE BOARD OF ASSESSORS AND LEHIGH VALLEY
RAILROAD COMPANY OF NEW JERSEY, PLAINTIFFS
IN ERROR.

Argued March 12, 1907—Decided July 2, 1907.

1. Under the act of 1884 (*Pamph. L., p.* 142), as amended by the
act of 1888 (*Pamph. L., p.* 269), four distinct elements enter
into the assessment of railroad property for taxation, namely, (1)
main stem, which is defined to be "the roadbed, not exceeding one
hundred feet in width, with its rails and sleepers, depot build-
ings used for passengers connected therewith;" (2) other real
property; (3) tangible personal property; (4) franchise. Each
of these four subjects of taxation is inherent in the property
owned by each railroad company organized under the laws of this
state.

2. Each railroad corporation owning and operating a railroad is
taxable under the statute, and each of the four classes of prop-
erty required to be ascertained by the board of assessors must be
ascertained as to each railroad, and in default of proof or other
facts changing the implication which arises from the organization
of a railroad company, the presumption is that the roadbed, as
laid under the route as filed, is to be taxed as main stem within
the statutory width, and this applies whether the railroad con-
ducts a passenger or freight business, or both.

3. Merged corporations, operated under the corporation into which
they are merged, normally retain, for the purposes of taxation
under the statute, the same features, with regard to main stem
and other property for taxation, as each of the merged lines pos-
sessed at the time of the merger.

4. A main stem must always exist in every incorporated railroad
company that is operated for the transportation of freight and
passengers, or either, however long or short the railroad may be.

5. In order to tax the property of an incorporated railroad company
within the one hundred feet of its roadbed as property other than
main stem it is essential to show, affirmatively, facts which estab-
lish that it is not being used for the transportation of freight and
passengers, or either.

On error to the Supreme Court. For opinion of that court,
see 44 *Vroom* 170.

For the plaintiffs in error, *Collins & Corbin* and *Robert H. McCarter,* attorney-general.

For the defendants in error, *George L. Record* and *Robert Carey.*

The opinion of the court was delivered by

FORT, J. The judgment of the Supreme Court sought to be reviewed by the writ in this case relates to the finding of that court under the statute, as to whether certain property belonging to, or operated by, the defendant, the Lehigh Valley Railroad Company, shall be assessed as main stem under the statute for the taxation of railroad property or as other real estate under that statute. The Supreme Court determined that the property was not main stem, but taxable under the other clauses of the statute.

The property in question was assessed by the state board of assessors as main-stem property, and the prosecutors claim that it should be assessed as other real estate.

The question before us in effect is, What constitutes the main stem of a railroad, and how is that question to be determined?

The taxes here under review were imposed in the years 1904 and 1905. The map in evidence designates the two tracts assessed as tracts B and C. The line B was admittedly originally a portion of the main stem of the National Docks Railway Company, and the line marked C was originally a portion of the main stem of the Jersey City and Western Railroad Company. These two railroads, together with the Bergen Neck railway, were consolidated in 1891, and the result of the consolidation was that the National Docks Railway Company had a continuous route from the Pennsylvania railroad to Constable Hook, and the whole of this route was admittedly assessed as main stem. The two lines in question, designated on the map as B and C, were used exclusively for the transportation of freight to and from the docks of the National Storage Company. No passengers were carried over

these lines, nor are there either freight or passenger stations on them, their length being only about a half mile each.

The National Storage Company and the National Docks Railway Company are owned by the Lehigh Valley Railroad Company, that is, that company posesses all their stock, and that company also operates the National Docks railway.

The act for the taxation of railroad and canal property, approved April 10th, 1884 (*Pamph. L., p.* 142), by the third section thereof, provides that it shall be the duty of the board of assessors created by that act, on the first Tuesday in May in each year, to proceed "to ascertain the true value of all property used for railroad or canal purposes of each railroad and of each canal company in this state, including its franchise, and they shall in such ascertainment ascertain separately: 1. The length and value of the main stem of each railroad and the waterway of each canal and the length of such main stem and waterway in each taxing district. 2. The value of the other real estate used for railroad or canal purposes in each taxing district in this state, including the roadbed (other than main stem), waterways, reservoirs, tracks, buildings, water-tanks, water-works, riparian rights, docks, wharves and piers, and all other real estate, except such lands not used for railroad or canal purposes." The third and fourth subdivisions of this section require the valuation of the tangible personal property and of the franchise.

The section then defines main stem as follows: "The term 'main stem' of each railroad and of each canal company, as used in this act, shall be held to include the roadbed, not exceeding one hundred feet in width, with its rails and sleepers, depot buildings used for passengers connected therewith."

This act was amended in 1888, but this section, as far as quoted, was not changed, except that the word "separately" was omitted in the act of 1888. The effect being to leave it for the board to ascertain the several classes of property and their value, not requiring that they should separately so ascertain it. *Pamph. L.* 1888, *p.* 269. .

By the sixth section of the act of 1884 (*Pamph. L., p.* 145) it was enacted as follows: "That, whenever in any taxing dis-

trict there shall be several branch lines of railroad belonging to, or controlled by, one company, or operated under one management, the assessors shall designate one of said lines as main stem, and the value of the others shall be included in the separate valuation provided for in the second subdivision of section 3 of this bill."

When the original assessments were made under the act of 1884, the state board of assessors, in pursuance of the requirement of the sixth section, undertook to designate, and did determine which was main stem and which were branch lines in the given case as to the Central railroad and the Philadelphia and Reading railroad, and these railroads prosecuted a writ of *certiorari* to test the constitutionality of this section of the act, which conferred upon the state board the authority to determine that main stem could only apply to such roads as the state board should designate; the contention being that every line of railway must have a main stem. Chief Justice Beasley, in *Central Railroad Co.* v. *State Board of Assessors,* 20 *Vroom* 1, declared (at *p.* 18) that this section of the statute was unconstitutional in conferring upon the board the power to select and to say a route was not main stem simply because it was the roadbed of a branch line. "Branch roads," he said, "must be taxed according to the general mode defined in this law, that is, each branch road must be assessed in part as main stem and in part as property used for railroad purposes."

When the legislature came to revise the act of 1884 in 1888, they omitted this sixth section of the act of 1884 from the revision, and the statute has remained from 1888 until the time of the imposition of the tax here under review without change in this regard, leaving only section 3 of the act of 1884, as amended by the act of 1888, as the basis for the assessment of the main stem and other real property of railroads. We think that this omission of the legislature was a direct recognition of the opinion of the Supreme Court in *Central Railroad Co.* v. *State Board of Assessors, supra,* and we agree with the view expressed by Chief Justice Beasley in that case, wherein he declared that there is no distinction, for the

purposes of taxation, between a principal, or main line, and a branch line, and that each must be assessed in part as main stem and in part as other real estate used for railroad purposes.

Every railroad must have a main stem. The one hundred feet of main stem of any railroad must, of necessity, be selected from that part of its right of way or roadbed, or other property upon which is laid, or proposed to be laid, the tracks over which its freight and passengers (if it carries passengers) are transported. All tracks outside of the one hundred feet, and the land upon which they are laid, and also tracks used exclusively for chutes into factories, and for yards, and the like, or used in the ordinary transaction of business for cars at rest, are not embraced within this definition, and could not have been intended to be embraced within the term "main stem" as used in the statute.

The language of the statute under consideration, as found in the act of 1884, and as amended in 1888, which casts upon the assessors the duty of taxing railroads, declares: "They shall proceed to ascertain the true value of all property used for railroad or canal purposes of each railroad and of each canal company of this state," &c. And the first subdivision declares, as we have seen, that in ascertaining the value for purposes of taxation they shall ascertain "the length and value of the main stem of each railroad," &c.

Each incorporated railroad is a corporate entity having a route, required by statute to be designated and filed (Gen. Stat., p. 2638), and such route thus filed and designated, in default of other proof, should be treated by the taxing authorities under this statute, to the extent of one hundred feet in width, as main stem.

Each railroad corporation, owning and operating a railroad, is taxable under the statute, and each of the four classes of property required to be ascertained by the board of assessors must be ascertained as to each railroad, and, in default of other proof, or other facts, changing the implication which arises from the organization of a railroad company, the presumption is that the roadbed, as laid under the route as

filed, is to be taxed as main stem within the statutory width; and this applies whether the railroad conducts a passenger or a freight business, or both.

Railroad corporations formed under the General Railroad act are also given the general powers in the act concerning corporations. *Gen. Stat., p.* 2638, § 1.

The General Railroad act distinctly authorizes the organization of corporations for the construction of railways of two classes—those which are less than ten miles in length and those which are more. *Gen. Stat., p.* 2638, § 1. But each class is distinctly a railroad, taxable as such, and taxable in the manner provided ·by the statute under consideration, viz., by first, main stem; second, other real property; third, tangible personal property; and fourth, franchise. Each of these four subject-matters of taxation are inherent in the ˙property of each railroad company organized under the laws of this state.

Nor will it matter that a merger of several railroads thus incorporated has taken place pursuant to statute.

The authority to merge˙ railroad corporations is conferred by two acts, at least, the one approved March 7th, 1878 (*Pamph. L., p.* 58), and the other approved April 28th, 1890. *Pamph. L., p.* 279.

The act of 1878, under given conditions, authorizes railroads to absolutely consolidate and merge their corporate rights, and, in such an event, all the property rights, franchises and privileges by law vested in such corporations so merged shall be transferred to, and vested in, the corporation into which such consolidation and merger shall be made. This statute sets out the method of the merger, and section 3 of it provides as follows: "That, upon the filing of the said certificate and copy of agreement in the office of the secretary of state, the said merger shall be deemed to have taken place, and the said corporations to be one corporation, possessing all the˙ rights, privileges and franchises theretofore vested in either of them." And it further provides that "all rights of way and all other interests shall be as effectively the property of said company or corporation into which such merger shall

have been made as they were of either of the former corporations."

The act of 1890 simply broadened the corporations which might merge, but did not change the effect of the merger as hereinbefore stated.

We think that the line of railway of merged corporations, operated by the consolidated corporation, normally retains, for the purposes of taxation under the statute, the same features with regard to main stem and other property as each of the merged lines possessed at the time of the merger. Of course, if it should appear that after a merger any one of the merged lines of railroad previously existing ceased to be operated for transportation of freight or passengers in the business of the merged company; or otherwise, and was used within the one hundred feet for cars at rest only, then the feature of main stem might, and undoubtedly would, be eliminated and the property taxed as other than main stem under the statute. But so long as the road is operated under a merger agreement, or under its original charter, as a railroad for the transportation of passengers and merchandise, or either, over its entire length, as created in its route as filed, or is operated on the route as constructed or completed, it must be deemed, under the statute, to have a main stem which is to be taxable as such in the manner pointed out in the statute.

The use, therefore, of the railroad as laid and operated may become, and undoubtedly is, material for the determination of the question as to what railroad property is to be taxed as main stem, and the only question of fact upon that point would be whether the road was used as a road for the transportation of freight or passengers, or both, over its own length alone, or over its own length and in connection with other railroads.

The proof in the case under review seems to us to be clear that these lines, which, it is claimed, are not to be taxed as having a main stem, because of their merger or ownership by the Lehigh Valley Railroad Company, have not changed their relations in any way. They are still operated as railroads for

freight purposes only, it is true, but they were organized for freight roads, and this in itself is of no concern upon the question of the main stem.

Both these lines, which it is sought to tax only as property other than main stem, lead to terminals and are absolutely essential to through freight reaching such terminals.

This view of the statute leads to the conclusion that a main stem must always exist in every incorporated company having a railroad, that is operated for the transportation of freight and passengers, however long or short the railroad may be, and that, in order to tax the property of an incorporated railroad company within the one hundred feet of its roadbed as property other than main stem, it is essential to show, affirmatively, facts which establish that it is not being used for the transportation of passengers and freight or either.

We think that the tax brought up in this case was rightly assessed by the state board of assessors against the property as main-stem property.

Reaching this result on the law and facts of the case, there must be a reversal of the Supreme Court and an affirmance of the tax as laid by the state board of assessors.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, FORT, HENDRICKSON, PITNEY, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.   13.