THE MAYOR AND ALDERMEN OF JERSEY CITY AND MARK M. FAGAN, PROSECUTORS, DEFENDANTS IN ERROR, v. THE STATE BOARD OF ASSESSORS AND UNITED NEW JERSEY RAILROAD AND CANAL COMPANY (PENNSYLVANIA RAILROAD COMPANY, LESSEE), DEFENDANTS, PLAINTIFFS IN ERROR.

Submitted July 8, 1907—Decided March 2, 1908.

1. Under the act of March 27th, 1888, for the taxation of railroad and canal property (*Gen. Stat., p.* 3325, *pl.* 214), there is no distinction for purposes of taxation between the principal or main line of a railway and a lawfully-authorized branch line of railway, but the property of each must be assessed in part as "main stem" and in part as "other real estate used for railroad purposes," according to the circumstances of the property.

2. Certain parcels of land owned by the United New Jersey Railroad and Canal Company, and upon which railroad tracks are maintained which originally formed a part of the main line of the New Jersey Railroad and Canal Company located under its charter (*Pamph. L.* 1832, *p.* 96), and which were left out of the main line by a straightening of tracks pursuant to the act of April 15th, 1868 (*Pamph. L., p.* 1037), but are continued in operation for railroad purposes pursuant to the act last cited. *Held,* not to form parts of the "main stem" of the principal line

of the railroad, and not to be branch railroads having their own "main stem."

3. The branch railroad of the United New Jersey Railroad and Canal Company known as the Harsimus branch, constructed under the acts of March 30th, 1868, and March 24th, 1869 (*Pamph. L.* 1868, *p.* 551; *Pamph. L.* 1869, *p.* 560)—*Held*, to be a branch railroad established and operated as such by legislative authority, and its property therefore assessable in part as "main stem" and in part as "other property used for railroad purposes," according to the circumstances of the property, by force of the Railroad Tax act of March 27th, 1888. *Gen. Stat., p.* 3325, *pl.* 214.

On error to the Supreme Court, whose opinion is reported in 44 *Vroom* 164.

For the plaintiffs in error, *James B. Vredenburgh.*

For the defendants in error, *George L. Record* and *Robert Carey.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR. Two matters were under consideration by the Supreme Court in this case.

The first was the complaint of Jersey City that the state board of assessors had omitted to tax certain lands owned by the United Companies and lying under the waters of the Hudson river. It appeared that while they did not assess these tracts by specific descriptions, they included their value in assessing the adjacent lands of the companies that lie back of the exterior line for solid filling. It appearing that the companies have acquired an actual estate in the lands under water, although the use thereof is limited by the words of the grant, the Supreme Court held that these lands should have been described in the assessment, and thereupon referred the assessment back to the state board in order that the description might be amended. We concur in the propriety of the judgment of the Supreme Court in this respect. In coming to this conclusion it is not necessary to determine whether the grants by the state to the united companies conferred an estate that is properly to be called a "fee-simple," or whether

such estate is free from any semblance of feudal tenure, so as more properly to be called allodial.

The other matter in controversy was the complaint made by Jersey City that the state board of assessors had taxed as "main stem" three parcels of land carrying railroad tracks which should properly have been assessed as "second-class railroad property." The Supreme Court held that they were erroneously assessed as "main stem," and by its judgment referred the assessment back to the state board of assessors, to the end that these parcels might be assessed as "second-class railroad property."

It is now insisted by the plaintiffs in error that these three parcels were properly assessed as main stem under the principle adopted by this court in *Jersey City* v. *State Board of Assessors and Lehigh Valley Railroad Co.,* 45 *Vroom* 720, reversing *S. C.,* 44 *Id.* 170. In that case it was declared in effect that under the act of March 27th, 1888, for the taxation of railroad and canal property (*Gen. Stat., p. 3325, pl. 214*), there is no distinction for purposes of taxation between the principal or main line of a railway and a lawfully-authorized branch line of railway; that the property of each must be assessed in part as "main stem" and in part as "other real estate used for railroad purposes," according to the circumstances of the property, and that where a line of railroad established and maintained by legislative sanction happens to be operated as a branch of another railroad, its property used for railroad purposes must still be separated for purposes of taxation into two classes, irrespective of whether the branch is used principally for freight or principally for passenger traffic.

Upon examining the agreed state of facts upon which the present case was submitted to the Supreme Court, with a view of determining the character of the three parcels of railroad property now in question, we find the following to be the situation:

The first parcel is described in the writ of *certiorari* as "(a)," and upon the map annexed to and forming part of the stipulated facts it is colored in yellow and designated as

"P. R. R. (a)." This strip formed a part of the filed survey of the main line, on a part of which the railroad was originally constructed under the charter of the New Jersey Railroad and Transportation Company, approved March 7th, 1832. *Pamph. L., p.* 96. It lies between the middle and easterly bank of the Hackensack river, and forms a portion of a strip that extends for some distance westerly, connecting at both ends with the present main line of the Pennsylvania railroad, which is taxed as main stem. After the original construction of the railroad, and by virtue of "An act relative to the Delaware and Raritan Canal Company, the Camden and Amboy Railroad and Transportation Company, and the New Jersey Railroad and Transportation Company," approved April 15th, 1868 (*Pamph. L., p.* 1037), the track was straightened for a short distance at and near the Hackensack river by the construction of what is now the main line at that point, but the piece shown in yellow, as well as its continuation on the westerly side of the river, was not abandoned, and has since continued to be used for the business of the railroad, but almost exclusively in freight transportation. The act of 1868, just referred to, in its first section authorizes the railroad companies mentioned in its title "to shorten, straighten, widen, or otherwise improve any part of their railroad lines respectively, * * * and, when any change of location may be determined on and a new route laid out, to construct their road thereon, * * * and, when such new route is completed, to abandon that part of the present route for which such new route may be substituted as soon as the same can be done without injury to the public or the business of said road. * * * And until so abandoned the said companies shall maintain and operate the same; *provided,* that such new location shall not deviate more than two miles from the present route, and shall not be of greater width than authorized by the original charter." It appears, therefore, that this parcel designated "P. R. R. (a)" is neither an independent nor a branch line of railroad, but is a part of the former main line, abandoned for use as such, and continued in operation for railroad purposes only because the exigencies of the public

and the business of the railroad require it to be thus maintained. It, however, forms no part of the "main stem" of the principal line of the railroad at this point, and cannot be dealt with as a branch railroad having a main stem of its own under the principle of the decision of this court in 45 Vroom 720. It is, in contemplation of law, the same as a "siding."

The parcel designated as "(b)" in the writ of certiorari, and designated on the map referred to as "P. R. R. (b)," formed a part of the filed survey of the original main line of the railroad, upon which the road was constructed under the charter already referred to. Pamph. L. 1832, p. 96. It extends from the present main line of the United New Jersey Railroad and Canal Company at or near Baldwin avenue, in Jersey City, to the main line of the National Docks railroad at or near Academy street, a distance of thirty-seven hundredths of a mile. Under the authority of the act of April 15th, 1868, already mentioned (Pamph. L., p. 1037), the tracks were straightened for a short distance at this point by the construction of the track which now forms the main line of the united companies at this place, and the parcel designated as "P. R. R. (b)" is now used principally for a branch to a railroad yard of these companies and to the National Docks railroad. What use it has in connection with the latter railroad does not appear, nor does it appear that by legislative authority it is maintained and operated in connection with the National Docks railroad. Upon the facts displayed by the present record the legal status of this parcel is the same as that of parcel "(a)," and it is not properly to be assessed as main stem.

The third parcel is designated as "(c)" in the writ of certiorari, and is a strip of land upon which is a railroad, known as the "Harsimus branch," extending from the main line of the United New Jersey Railroad and Canal Company at or near Waldo avenue, in Jersey City, and running parallel with Sixth street to tidewater, a distance of one and sixty-eight hundredths miles. It is marked on the map referred to as "P. R. R. (c)." This branch was constructed under an act

of March 30th, 1868, entitled "An act to enable the United Railroad and Canal Companies to increase their depot and terminal facilities at Jersey City" (*Pamph. L.* 1868, *p.* 551), and under an act of March 24th, 1869. *Pamph. L., p.* 560. The act of 1868 empowered the united companies to construct a branch railroad from their shore property at Harsimus cove to a point in the then line of the New Jersey railroad in or eastward of the deep cut in Bergen hill. This branch is used principally for freight transportation, but this circumstance, as we observed in the case already cited (45 *Vroom* 720), is not controlling. It is a branch railroad, established and operated as such by legislative authority, and its property must therefore be assessed in part as "main stem" and in part as "other property used for railroad purposes," according to the circumstances of the property, by force of the taxing act of 1888.

No question is made that if any part of this strip designated as "(c)" is to be treated as main stem the whole of it is to be so treated. Nor does the agreed statement of facts disclose whether the roadbed occupies less than the entire width of the strip. Therefore the case does not present the question that was recently dealt with by the Supreme Court *In re United New Jersey Railroad and Canal Co., ante p.* 385.

It results that, with respect to parcel "(c)," the judgment of the Supreme Court must be reversed and the action of the state board of assessors affirmed. In other respects the judgment of the Supreme Court should be affirmed.

*For affirmance*—None.

*For reversal*—PITNEY, CHANCELLOR, THE CHIEF JUSTICE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 10.